UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BELPARTS GROUP, N.V., | : | |
| | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | No. 3:21-cv-00334 (SALM) |
| | : | |
| BELIMO AUTOMATION AG and | : | |
| BELIMO AIRCONTROLS (USA), INC., | : | |
| | : | |
| *Defendants*. | : | |

## RULING ON PLAINTIFF'S MOTION TO COMPEL

Plaintiff Belparts Group, N.V. ("Belparts") brings this action under 35 U.S.C. § 1, *et seq.*, alleging patent infringement against the defendants Belimo Automation AG ("Belimo AG") and Belimo Aircontrols (USA), Inc. ("Belimo USA"). Plaintiff's "Motion to Compel Compliance with Discovery and Request for Letter Rogatory," Doc. No. 61, has been referred to the undersigned for a ruling. Doc. No. 64. For the reasons that follow, the motion is **GRANTED in part** and **DENIED in part**. In summary, the Court overrules the defendants' general objection that compliance with discovery under the Federal Rules of Civil Procedure would violate Swiss law, further overrules defendant Belimo AG's general objection that it will only respond to discovery pursued by plaintiff under the Hague Convention and declines to issue the plaintiff's broad proposed letter of request under the Hague Convention.[1] Accordingly, at this time, discovery in this action shall proceed under the Federal Rules of Civil Procedure as to all parties.

---

[1] References to the Hague Convention herein pertain to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, March 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444 (a/k/a "Hague Evidence Convention"). This ruling does not pertain to the Hague *Service* Convention. *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988).

I.      BACKGROUND

As admitted in the pleadings, the parties are in the business of developing and producing components and devices utilized in heating, ventilation, and air conditioning ("HVAC") systems. Plaintiff Belparts is based in Belgium. Defendant Belimo AG is headquartered in Switzerland, and defendant Belimo USA is headquartered in Danbury, Connecticut.[2]  Doc. No. 17, 42, 45.

Belparts initially sued a different Belimo entity (Belimo Holding, A.G.). Doc. No. 1. The parties jointly moved to substitute Belimo Automation AG at the suggestion of defendants' counsel. Doc. No. 15. While denying liability and reserving rights, defendants' counsel clarified: "Holding AG is simply a holding company, and proceeding with them as defendant will not yield the access to the discovery that we expect you will seek. . . . Belimo Automation AG is an operating company, and I expect they will be who you will want to target in discovery ultimately." Doc. No. 78-3, at 4.

In its Amended Complaint, Belparts alleges that it owns two U.S. patents, that Belimo AG produces certain products which infringe upon those patents, and that Belimo USA distributes the infringing products in the United States. Doc. No. 17. Belparts seeks compensatory damages, an order permanently enjoining defendants from infringing upon the patents at issue and reasonable attorneys' fees and expenses. Both Belimo AG and Belimo USA have asserted counterclaims seeking a declaratory judgment that the subject patents are invalid, and an award of attorney's fees and costs. Doc. No. 42, at 9-14.

Defendants have served discovery requests on Belparts under the Federal Rules of Civil Procedure, *see* Doc. No. 65-2, and have pursued compliance with those requests. *See*, *e.g.*, Doc.

---

[2] The Court takes judicial notice of records on the State of Connecticut website indicating that Belimo USA is a Delaware corporation and both Belimo AG and Belimo USA are registered to do business in Connecticut. *See* https://service.ct.gov/business/s/onlinebusinesssearch.

Case 3:21-cv-00334-SALM   Document 88   Filed 04/26/22   Page 3 of 16

No. 78-5 and 78-7 (meet and confer letters). Belparts likewise has served discovery requests on the defendants under the Federal Rules; however, among a multitude of general objections and then specific objections to each request, the defendants have asserted a general objection to that discovery on the ground that the discovery sought would violate Articles 271 and 273 of the Swiss Criminal Code. *See* Belimo AG Gen'l Obj. #11, Doc. No. 65-5, at 5; Belimo USA Gen'l Obj. #12, Doc. No. 65-3, at 5.[3]  While all parties concur – in their briefs and at oral argument held on April 13, 2022 – that Belimo USA has produced at least some responsive documents, they disagree as to whether Belimo AG has produced anything at all. Notably, although Belimo AG suggested in June 2021 correspondence that it might produce a subset of responsive information in compliance with Federal Rules discovery, *see* Doc. No. 78-4, more recent correspondence dated February 16, 2022, suggested that Belimo AG is asserting a blanket objection to Federal Rules compliance and that it intends only to comply with discovery undertaken pursuant to the Hague Convention. *See* Doc. No. 78-7, at 3 ("[W]e will serve objections in response to Belparts' U.S. discovery directed to Belimo Automation without providing any substantive responses and without producing any documents."). Further, in the February 28, 2022, document titled "Belimo Automation AG Objections and Responses to Plaintiff's First Set of Requests for Production (Nos. 1-74), Belimo AG asserted the following general objection:

> Belimo Automation objects to Plaintiff's Requests to the extent they seek to require Belimo Automation to provide information and/or documents and things in a manner that is inconsistent with the provisions of the Hague Convention of 18 March 1770 on the Taking of Evidence Abroad in Civil or Commercial Matters, Sections 271 and 273 of the Swiss Penal Code, as well as any other applicable laws, treaties, or rules regarding obtaining evidence located in Switzerland for use

---

[3] Defendants also cite Switzerland's Federal Act on Data Protection ("FADP") in their opposition brief. Def. Opp. Br., Doc. No. 77, at 9. However, the brief fails to articulate how any of the 34 separate articles within the FADP might apply to the facts of this case.

> in U.S. litigation.  Belimo Automation will not produce any information, documents or things in response to Plaintiff's Interrogatories.  *Belimo Automation will only produce information, documents, or things, to the extent such information, documents, or things exist and subject to any objections Belimo Automation may raise, in response to discovery Belparts may pursue under the Hague Convention.*

(Emphasis added.)

The parties were unable to resolve the general Swiss law objection during a telephonic meet and confer and subsequent correspondence.  *See* Doc. No. 65-7, 65-9, 78-5, 78-6, and 78-7.  Belparts has offered to pursue parallel discovery under the Hague Convention to resolve the objection, *see* Doc. No. 78-6, and has submitted a proposed letter rogatory that it asks this Court to issue to the Swiss court.  In its opposition, Belimo AG contends that parallel discovery would be inefficient, and insists that Belparts should serve discovery solely under the Hague Convention.  Def. Opp. Br., Doc. No. 77, at 13.  Accordingly, the only issues before this Court on the present motion to compel are the validity of the defendants' general objection that discovery sought by Belparts would violate Articles 271 and 273 of the Swiss Penal Code and that any discovery against Belimo AG should proceed solely under the Hague Convention, and whether the discovery sought by Belparts under the Federal Rules should proceed in parallel in the Swiss courts pursuant to a letter rogatory to be served under the Hague Convention.

## II.     LEGAL STANDARD

Under Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . .  Information within this scope of discovery need not be admissible in evidence to be discoverable."  Parties may serve written interrogatories and requests for production, and the responding party must state any objections thereto "with specificity."  Fed. R. Civ. P. 33 and 34.  In particular, a party objecting to a request for

4

production must "state with specificity the grounds for objecting to the request, including the reasons," and also must state whether any responsive materials are being withheld on the basis of that objection. Fed. R. Civ. P. 34(b). Trial courts in this circuit have repeatedly admonished litigants that the specificity requirement is not satisfied by "general objections" or the boilerplate refrain that every request is "overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence." *See Vidal v. Metro-N. Commuter R. Co.*, No. 3:12-cv-248 (MPS), 2013 WL 1310504, at *1 (D. Conn. Mar. 28, 2013) (Fitzsimmons, M.J.); *Fischer v. Forrest*, No. 14-cv-1304 (PAE)(AJP), 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017).

Pursuant to Rule 37(a), where the responding party fails to make a disclosure, the party seeking discovery may move for an order compelling disclosure or discovery. The movant must first confer with the resisting party in good faith in an effort to resolve the issue without court intervention. Fed. R. Civ. P. 37(a); D. Conn. L. Civ. R. 37(a). When adjudicating discovery disputes, courts are guided by the principle that "[a] party must be afforded a meaningful opportunity to establish the facts necessary to support his claim." *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008). "A district court has wide latitude to determine the scope of discovery, . . . [and] abuses its discretion only when the discovery is so limited as to affect a party's substantial rights." *Id.* (internal citations and quotation marks omitted).

## III.   DISCUSSION

### A. Defendants' Swiss law objections are overruled

Defendants object that compliance with Federal Rules discovery would violate Articles 271 and 273 of the Swiss Criminal Code and place them in jeopardy of criminal prosecution in Switzerland. In response to Belparts' motion to compel, defendants urge this Court to conduct a

comity analysis and to order Belparts to pursue discovery solely under the Hague Convention as a first resort. Doc. No. 77, at 13-16.

### 1. Articles 271 and 273

Article 271 imposes criminal liability on "[a]ny person who carries out activities on behalf of a foreign state on Swiss territory without lawful authority, where such activities are the responsibility of a public authority or public official." Swiss Criminal Code, Art. 271 (available at: https://www.fedlex.admin.ch/eli/cc/54/757_781_799/en#art_271). Article 271 also imposes liability on persons who carry out such activities "for a foreign party or organisation" or who "facilitates such activities." *Id.* Defendants contend that obtaining evidence is the responsibility of public authorities in Switzerland, such that they would be in violation of Article 271 if they complied with Belparts' Federal Rules discovery.[4]

Article 273 is labeled as an "industrial espionage" statute. Swiss Criminal Code, Art. 273 (available at https://www.fedlex.admin.ch/eli/cc/54/757_781_799/en#art_273). It imposes criminal liability on any person who "makes a manufacturing or trade secret available to an foreign official agency, a foreign organisation, a private enterprise, or the agents of any of these," or "seeks to obtain" a manufacturing or trade secret for that purpose. *Id.*

---

[4] One purpose of the Hague Convention was to "bridge differences between the common law and civil law approaches to the taking of evidence abroad." *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 531. "Unlike the common-law practice [in countries such as the United States], which places upon the parties to the litigation the duty of privately securing and presenting the evidence at the trial, the civil law considers obtaining of evidence a matter primarily for the courts, with the parties in the subordinate position of assisting the judicial authorities." *Id.* at 557 (Blackmun, J., concurring in part and dissenting in part) (quoting Report of United States Delegation to Eleventh Session of the Hague Conference on Private International Law, 8 Int'l Legal Materials 785, 806 (1969)). Statutes like Article 271 are sometimes referred to as "blocking statutes." *See id.* at 544 n.29 (discussing interplay between blocking statutes and discovery orders of the U.S. district courts).

## 2. Legal standard for determining whether discovery should proceed under the Hague Convention

The Supreme Court has expressly rejected the argument that litigants in federal courts must first resort to Hague Convention procedures whenever discovery is sought from a foreign litigant. *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 541-46 (1987) (affirming denial of foreign defendant's motion for broad protective order). "American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position," *id.* at 546, and foreign litigants should be provided "a full and fair opportunity to demonstrate appropriate reasons for employing Convention procedures in the first instance, for some aspects of the discovery process." *Id.* at 547. However, "[t]he exact line between reasonableness and unreasonableness in each case must be drawn by the trial court, based on its knowledge of the case and of the claims and interests of the parties and the governments whose statutes and policies they invoke." *Id.* at 546. The court must scrutinize "the particular facts, sovereign interests, and likelihood that resort to [Hague Convention] procedures will prove effective." *Id.* at 544. In that evaluation, the "overriding interest" is the "just, speedy, and inexpensive determination" of litigation in the federal courts. *Id.* at 543 (quoting Fed. R. Civ. P. 1). Although the Supreme Court declined to articulate specific rules for this "delicate task," it cited standard factors that "are relevant to any comity analysis." *Id.* at 544 n.28.[5]

---

[5] These factors include: "(1) the importance to the ... litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine

7

The threshold question in a comity analysis is whether there is a true conflict between domestic and foreign law. *Id.* at 555 (Blackmun, J., concurring in part and dissenting in part); quoted in *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 768 (1993); *In re Maxwell Commc'n Corp. plc by Homan*, 93 F.3d 1036, 1049 (2d Cir. 1996); *see also Linde v. Arab Bank, PLC*, 262 F.R.D. 136, 148 (E.D.N.Y. 2009) (denying motion to compel based on comity analysis concerning Israeli bank confidentiality law). In present circumstances, that means "a party seeking an order to apply Hague Convention procedures in lieu of the procedures set forth in the Federal Rules of Civil Procedure must demonstrate that a specific foreign law 'actually bars the production or testimony at issue.'"[6] *EFG Bank AG v. AXA Equitable Life Ins. Co.*, No. 17-cv-4767 (JMF), 2018 WL 1918627, at *1 (S.D.N.Y. Apr. 20, 2018) (quoting *Alfadda*, 149 F.R.D. at 34; *see also NML Capital, Ltd. v. Republic of Argentina*, No. 03-cv-8845 (TPG), 2013 WL 491522, at *3 (S.D.N.Y. Feb. 8, 2013) (granting motion to compel); *Brit. Int'l Ins. Co. v. Seguros La Republica, S.A.*, No. 90-cv-2370 (JFK)(FM), 2000 WL 713057, at *8 (S.D.N.Y. June 2, 2000) (granting motion to compel). The objecting party must show more than a "mere risk" that discovery compliance will violate the foreign law. *EFG Bank*, at *2. Ultimately, as is the case here, the Court's task is "is not to definitively determine what Swiss law is, but rather to decide whether the risk of prosecution under Article 271 is so great" as to warrant the protection

---

important interests of the state where the information is located." *Société Nationale*, 482 U.S. at 544 n.28.

[6] Notably, the existence of a true conflict is only the threshold question. Even if the objecting party demonstrates that compliance with U.S. discovery would violate a foreign blocking statute, that "do[es] not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that [foreign] statute. . . . The blocking statute [] is relevant to the court's particularized comity analysis only to the extent that its terms and its enforcement identify the nature of the sovereign interests in nondisclosure of specific kinds of material." *Société Nationale*, 482 U.S. at 544 n.29.

that the objecting party seeks. *Id.* at *1 (quoting *Microsoft Corp. v. Weidmann Elec. Tech. Inc.*, No. 5:15-cv-153 (GWC), 2016 WL 7165949, at *12 (D. Vt. Dec. 7, 2016)).

Along with this burden of persuasion, the objecting party bears a corresponding burden of production. "In order to meet that burden, the party resisting discovery must provide the Court with information of sufficient particularity and specificity to allow the Court to determine whether the discovery sought is indeed prohibited by foreign law." *Alfadda*, 149 F.R.D. at 34; "In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1. "Generally, sworn testimony or affidavits are preferable to support an argument that ordering discovery would violate foreign law." *NML Capital*, 2013 WL 491522 at *3 (citing *Application of Chase Manhattan Bank*, 191 F. Supp. 206, 209 (S.D.N.Y.) ("Generally affidavits are the minimal formal requirements.")). Conclusory assertions are not enough, even if submitted in the form of an expert opinion. *See*, *e.g.*, *NML Capital*, at *3 (declining to credit expert opinions that did "not provide support for their assertions"); *Brit. Int'l Ins. Co.*, 2000 WL 713057, at *8 ("apart from the conclusory assertions of its foreign law expert, [defendant] has not offered any corroborative detail").

3. **Defendants have not demonstrated a true conflict between domestic and foreign law**

In the present case, defendants have not carried their burdens of production and persuasion to sustain their argument that compliance with Federal Rules discovery in this case would violate Swiss law. The only support that defendants have submitted for their conclusory argument is an article captioned "Obtaining Evidence in Switzerland: The Dilemma and the Stumbling Blocks of Art. 271 and Art. 273 Swiss Penal Code" authored by a Dr. Martin P. Henrich, who is identified as "Head Global Litigation at Novartis International, Basel." Doc.

No. 78-10. The Henrich article lacks basic indicia of reliability for use in this case. It is unclear in what context the article was published, or for what purpose; it is undated; it is not verified under oath; it offers unsupported assertions concerning the application of Articles 271 and 273 to U.S. discovery, citing only to other articles rather than official decisional precedent; it does not address the particular facts of this case; it does not offer any basis for concluding that the author is an expert on Swiss law generally or the Swiss Criminal Code in particular; and it apparently was written by corporate counsel for a global healthcare company based in Switzerland, which raises a question of bias. Of further note, defendants have not supplied the Court with evidence of any Swiss decisions or prosecutions under Articles 271 and 273 that might be relevant to the present circumstances, such as prosecutions against persons or entities who voluntarily produced documents in their possession in civil litigation to which they were a party,– and defendants' counsel conceded at oral argument that he was not aware of any. Lastly, with specific reference to Article 273, defendants have submitted no evidence that any manufacturing or trade secrets in their possession or in the hands of any third parties are responsive to Belparts' discovery requests, or that any responsive information could implicate Swiss national interests. In fact, the Henrich article refers to Swiss companies as "masters of their own secrets," and asserts that a Swiss company may produce documents containing its own business and trade secrets without violating Article 273. Doc. No. 78-10, at 3. Similarly, U.S. courts have observed that Article 273 does not appear to prohibit a party from divulging its own business affairs unless "Swiss national interests are actually endangered by disclosure." *Alfadda v. Fenn*, 149 F.R.D. 28, 33 (S.D.N.Y. 1993); *see also Rotstain v. Trustmark National Bank*, No. 3:09-cv-2384-N-BQ, 2020 WL 12968653, at *2 (N.D. Tex. Feb. 19, 2020); *Schindler Elevator Corp. v. Otis Elevator Co.*, 657 F. Supp. 2d 525, 533 (D.N.J. 2009); *Roberts v. Heim*, 130 F.R.D. 430, 436 (N.D. Cal. 1990).

Based on this record, the Court cannot conclude that defendants face a material risk of prosecution in Switzerland if they comply with the civil discovery that Belparts has served under the Federal Rules of Civil Procedure. Moreover, other trial courts in this circuit have reached the same conclusion regarding Articles 271 and 273 based upon more robust presentations. *See*, *e.g.*, *EFG Bank*, 2018 WL 1918627 (S.D.N.Y. Apr. 20, 2018) (Article 271); *Microsoft Corp. v. Weidmann Elec. Tech. Inc.*, No. 5:15-cv-153 (GWC), 2016 WL 7165949, at *12 (D. Vt. Dec. 7, 2016) (Article 271); *Alfadda*, 149 F.R.D. 28 (S.D.N.Y. 1993) (Article 273). For example, in *EFG Bank*, the parties submitted competing expert opinions and copies of decisions of the Swiss Federal Department of Justice and Police ("FDJP"). Those opinions and decisions indicated that although Article 271 might be implicated if the responding party was threatened with criminal sanctions for failure to comply with a discovery order, the statute does not preclude voluntary disclosure in compliance with a civil discovery order if the consequence for noncompliance is procedural only. *EFG Bank*, 2018 WL 1918627, at *2-3 (noting that decisions of the FDJP "indicate that Swiss law does not preclude the voluntary production of documents by a private party and that 'voluntary' is defined broadly to include the production of discovery so long as the party faces only procedural consequences rather than criminal sanctions for its failure to produce"). The court further observed:

> Conspicuously, [the objecting party] fails to identify a single case in which a party was found to have violated Article 271 by disclosing its own documents absent a court order threatening criminal sanctions. That is presumably because no such case exists. Indeed, [the objecting party]'s own expert on Swiss law concedes that no court has held that production by a party in the circumstances presented here violates Article 271.

*Id.* at *2. Consequently, the court denied the objecting party's motion for protective order and ruled that the discovering party could proceed with Federal Rules discovery, without resort to the Hague Convention. *Id.* at *3.

11

In the present case, defendants face no threat of criminal sanction from any U.S. authority for noncompliance with the discovery that Belparts has served under the Federal Rules of Civil Procedure. The common sanctions for noncompliance with discovery orders described in Fed. R. Civ. P. Rule 37(b)(2)(A) are procedural consequences and, at this time, there is no reason to believe the Court will have to impose them. Nor have defendants made any particular or specific showing that compliance with Belparts' written discovery requests might require them to divulge any manufacturing or trade secrets, let alone secrets that could implicate Swiss national interests. Nor have defendants articulated with any specificity whether or which of the pending discovery requests might implicate the information of third parties. *See EFG Bank*, 2018 WL 191862, at *2 (citing FDJP decision suggesting that collection and transfer of information about third parties might violate Article 271); *but see Motorola Credit Corp. v. Uzan*, 73 F. Supp. 3d 397, 404 n.3 (S.D.N.Y. 2014) (citing FDJP decision that Article 271 does not preclude adherence to a U.S. court's order to search for bank account documents located in Swiss bank branches). Because defendants have failed to meet the threshold requirement of demonstrating a true conflict of law, no further comity analysis is warranted, and their general objection to complying with Federal Rules discovery is overruled.[7]

## B. Request for letter rogatory

In addition to pursuing discovery compliance under the Federal Rules, Belparts has asked this Court to issue a letter of request under the Hague Convention. The proposed letter includes 34 document requests, including one request with 25 subparts, which are essentially the same as

---

[7] Because the Court does not undertake a comity analysis, this ruling does not address the weight of the facts that Belimo USA is incorporated in the United States and that both defendants have availed themselves of the federal courts by filing affirmative counterclaims and pursuing discovery compliance from Belparts under the Federal Rules.

the requests Belparts served under the Federal Rules. Doc. No. 65-1. In response, Belimo AG has drafted objections that are largely boilerplate, including the same "general objections" based on Swiss law that it raised in response to Federal Rules discovery. Doc. No. 77, at 24-50.

According to Belparts, serving Hague Convention discovery in parallel to the Federal Rules discovery would allay defendants' concerns about criminal exposure under Swiss law while ensuring that Belparts obtains the full scope of disclosure to which it would ordinarily be entitled. *See* Pl. Br., Doc. No. 65, at 2-3, 11-12. Belparts further asserts that parallel discovery would avoid unnecessary discovery disputes and promote efficiency. *Id.* at 12. Defendants, however, object that pursuing the same discovery under two sets of discovery procedures would be costly and unnecessary. Def. Opp. Br., Doc. No. 77, at 13.

Having overruled defendants' general objection to complying with Federal Rules discovery in this case, the Court concludes that Belparts' proposed letter rogatory is neither necessary nor appropriate at this time. Under the Hague Convention, a letter of request must specify "the evidence to be obtained or other judicial act to be performed." *Société Nationale*, 482 U.S. at 546 n.3 (citing Hague Evidence Convention, Art. 3). "[W]hen determining whether to issue letters rogatory, courts apply the principles of Federal Rule of Civil Procedure 26," including as to relevance, proportionality, burden, and whether the discovery is duplicative or cumulative. *Nespresso USA, Inc. v. Williams-Sonoma, Inc.*, No. 1:19-cv-4223 (LAP)(KHP), 2021 WL 942736, at *2 (S.D.N.Y. Mar. 12, 2021). Furthermore, "it is the duty of this court to carefully scrutinize applications of this type to attempt to minimize the burden placed on the foreign judiciary by virtue of such an application." *Metso Mins. Inc. v. Powerscreen Int'l Distribution Ltd.*, No. 06-cv-1446 (ADS)(ETB), 2007 WL 1875560, at *1 (E.D.N.Y. June 25, 2007) (citing *Société Nationale*, 482 U.S. at 546). In this case, in light of the Court's ruling that

discovery in this matter shall proceed under the Federal Rules and the fact that plaintiff's proposed Hague Convention discovery is nearly identical, it would not only be inefficient to ask the Swiss authority to supervise duplicative discovery, but it also could lead to confusion and conflicting decisions between this Court and the Swiss authority regarding the same issues. *See, e.g.*, *Work v. Bier*, 106 F.R.D. 45, 56 n.15 (D.D.C. 1985) (citing the risk of conflicting decisions among reasons for declining to issue letter rogatory as a first resort).

The Court recognizes that, as this case develops, there could arise some valid basis for pursuing a particular subset of discovery under the Hague Convention. Accordingly, this denial is without prejudice to filing a future request for a letter rogatory under appropriate circumstances and narrowly tailored to address such circumstances. In the event that any party believes that focused Hague Convention discovery may be appropriate, all parties should be prepared at that time to address the above-described standards that apply to the Court's scrutiny of proposed foreign discovery. As the Supreme Court has observed:

> Although the [Hague Convention] discovery request must be specific, the party seeking discovery may find it difficult or impossible to determine in advance what evidence is within the control of the party urging resort to the Convention and which parts of that evidence may qualify for international judicial assistance under the Convention. This information, however, is presumably within the control of the producing party from which discovery is sought. The district court may therefore require, in appropriate situations, that this party bear the burden of providing translations and detailed descriptions of relevant documents that are needed to assure prompt and complete production pursuant to the terms of the Convention.

*Société Nationale*, 482 U.S. at 546 n.30.

The Court also recognizes that this motion to compel addressed only a single overarching general objection to discovery served by plaintiff, and that there remain numerous objections to the specific discovery requests propounded by plaintiff. In moving forward with discovery, the parties should be mindful of the scheduling order and their obligations under the discovery rules,

including stating objections with specificity, identifying whether responsive materials are being withheld on the basis of the objections asserted, providing a privilege log where privileges have been asserted, and meeting and conferring in good faith to narrow or eliminate discovery disputes.  *See* Fed. R. Civ. P. 26(b)(5)(A), 33(a)(4), 34(b)(2)(B)-(C), and 37(a)(1).  The parties should also be mindful of and the important interest in construing and administering the Federal Rules to secure the "just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1;.

### IV.     CONCLUSION

For the foregoing reasons, plaintiff's Motion to Compel Compliance with Discovery and Request for Letter Rogatory, Doc. No. 61, is **GRANTED in part** and **DENIED in part**. Defendants' general objections based on Swiss law are overruled, and the Court declines to issue the proposed letter rogatory.

The Court further **ORDERS** as follows.  Within 30 days of this Order, defendants shall substantively respond to the discovery requests that Belparts served under the Federal Rules of Civil Procedure to which defendants do not have any further objection and shall produce the responsive materials.  Also within 30 days of this Order, to the extent that any party is withholding responsive materials on the basis of a discovery objection beyond that which has been overruled in this Order, it shall serve revised objections that comply with the requirements of Fed. R. Civ. P. 34(b)(2)(B)-(C).

This is not a recommended ruling.  This is an order regarding case management which is reviewable pursuant to the "clearly erroneous" statutory standard of review.  28 U.S.C. §

636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2.  As such, it is an order of the Court unless reversed or modified by the District Judge upon motion timely made.

SO ORDERED, this 26th day of April, 2022, at Bridgeport, Connecticut.

>*/s/ S. Dave Vatti*
> S. DAVE VATTI
> United States Magistrate Judge